IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Gregory Perkins, ) | C/A No. 4:10-cv-00439-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| General Insurance Company of America, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Pending before the Court is General Insurance Company of America's ("General") Motion for Summary Judgment [Docket # 20]. This lawsuit involves the alleged larceny of a 2008 Harley-Davidson motorcycle occurring in North Myrtle Beach, South Carolina on May 18, 2008. Gregory Perkins ("Perkins") entered into a contract for insurance coverage on the motorcycle, which included comprehensive coverage for larceny, with General. Perkins filed this action alleging breach of contract and bad faith refusal to pay benefits after General denied Perkins' claim for policy benefits. For the following reasons, the Court denies General's Motion for Summary Judgment.

**Factual Background**

General entered into a contract for motorcycle insurance, Policy Number X5358262 (the "Policy") with Perkins on May 11, 2008. The application for insurance was made and the Policy was issued with the intent of insuring lives, property, and interests within the State of South Carolina, specifically pertaining to a 2008 Harley-Davidson motorcycle with VIN Number 1HD1JM5498Y065387 (the "motorcycle"). The Policy provided coverage to Perkins from May 11, 2008, until May 11, 2009. The Policy has limits of $25,000/50,000/25,000.

Perkins purchased the motorcycle on May 11, 2008, from the Harley Shop at the Beach located in North Myrtle Beach, South Carolina. On or about May 18, 2008, Perkins allowed Cedric Jenkins ("Jenkins") and Christopher Johnson ("Johnson") to ride the motorcycle.[1] Although Johnson had permission to drive the motorcycle initially, he kept the motorcycle longer than Perkins intended and, in fact, never returned the motorcycle to Perkins or contacted Perkins regarding the motorcycle. Perkins contacted the Horry County Police Department on or about May 18, 2008, regarding the loss of the motorcycle, but did not report it as stolen during this initial conversation. After Johnson failed to return the motorcycle on May 19, 2008, Perkins contacted the Horry County Police Department to report the motorcycle as stolen. After an investigation into the loss of the motorcycle, the police determined that it was not stolen and was not the subject of a theft. However, Lieutenant Duke ("Duke") of the Horry County Police Department and a judge in Horry County both agreed that "at most, this was a 'breach of trust.'" (Pl. Response in Opp., Ex. "C"). Perkins notified General of the loss of the motorcycle on May 21, 2008. Subsequently, General denied Perkins' claim for policy benefits.

## **Legal Standards**

*Summary Judgment*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (2009). The movant has the burden

---

[1] According to his deposition testimony, while Perkins admits that he voluntarily permitted both Jenkins and Johnson to ride the motorcycle, Johnson was the individual who took lawful possession by driving the motorcycle out of Perkins' yard and subsequently failed to return it. Jenkins drove his own vehicle and merely followed Johnson, who left on the motorcycle. Thus, for the purposes of this motion and, specifically whether there was a breach of trust, the focus is on Johnson rather than Jenkins.

2

of proving that summary judgment is appropriate. Once the movant makes the showing, however, the opposing party must respond to the motion with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp.,* 477 U.S. at 322.

*General Principles of Insurance Law*

Section 38-61-10 of the South Carolina Code provides that:

> All contracts of insurance on property, lives, or interests in this State are considered to be made in the State and all contracts of insurance the applications for which are taken within the State are considered to have been made within this State and are subject to the laws of this State.

S.C. Code Ann. § 38-61-10 (2006). As such, the Court must apply South Carolina law to this dispute. Pursuant to South Carolina law, an insurance policy is a contract subject to the general rules of contract

3

construction. *Standard Fire Ins. Co. v. Marine Contracting & Towing Co.,* 392 S.E.2d 460, 461 (S.C. 1990); *see Estate of Revis v. Revis,* 484 S.E.2d 112, 116 (S.C. Ct. App. 1997). "The court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary and popular meaning." *State Auto Prop. and Cas. Co. v. Brannon*, 426 S.E.2d 810, 811 (S.C. Ct. App. 1992). Whether the language of a contract is ambiguous is a question of law for the court. *Hawkins v. Greenwood Dev. Corp.,* 493 S.E.2d 875, 878 (S.C. Ct. App. 1997). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.,* 514 S.E.2d 327, 535 (S.C. 1999); *see S.C. Dep't of Natural Res. v. Town of McClellanville,* 550 S.E.2d 299, 303 (S.C. 2001) (stating the construction of a clear and unambiguous contract is a question of law for the court). However, "the terms of an insurance policy must be construed most liberally in favor of the insured and where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." *Rhame v. Nat'l Grange Mut. Ins. Co.,* 121 S.E.2d 94, 96 (S.C. 1961) (citation omitted).

## **Discussion**

*The Policy*

The Policy issued to Perkins by General, in pertinent part, provides the following:

> PART D-COVERAGE FOR DAMAGE TO YOUR MOTORCYCLE
> INSURING AGREEMENT
>
> A.    We will pay for direct and accidental loss to your covered motorcycle, including original factory installed equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to your covered motorcycle caused by:
>
>     1.    Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for that motorcycle.

4

> 2. Collision only if the Declarations indicate that Collision Coverage is provided for that motorcycle.
>
> B. "Collision" means the upset of your covered motorcycle or its impact with another vehicle or object . . . . "Comprehensive" means loss, other than collision, to your covered motorcycle. Loss caused by the following are not collision losses but are comprehensive losses:
>
> 3. theft or larceny[.]

*See* (Def. Motion for Summary Judgment, Ex. "A").

The language of the Policy is clear and unambiguous and is not susceptible to more than one interpretation. Therefore, the question of whether there is coverage for the loss of the motorcycle is a question of law for the Court. *See S.C. Dep't of Natural Res.,* 550 S.E.2d at 303. The Policy contains both Collision and Comprehensive Coverage. Perkins has presented no evidence of a collision and, in fact, contacted General after an alleged larceny resulting in loss of the motorcycle. As such, Perkins must proceed, if at all, under the Comprehensive Coverage portion of the Policy. The pivotal issue in this case is whether or not Perkins' loss was the result of a theft or larceny, which would trigger coverage under the Comprehensive Coverage portion of the Policy.

*Arguments and Analysis*

In its Motion for Summary Judgment, General argues that this lawsuit "is precisely the tort of conversion and, thus, does not fall within the Comprehensive Coverage provision of the Policy."[2] (Def. Motion for Summary Judgment, p. 8). General argues that "it is clear that the taking of one's property must be done without the consent of the owner in order for it to constitute theft or larceny." *Id.* at 7.

---

[2] The Court notes that the mere fact that one's actions may constitute the tort of conversion would not necessarily preclude the same actions from constituting the crime of larceny.

Further, General cites the undisputed fact that Perkins initially allowed Johnson to ride the motorcycle and argues that "[t]hough Johnson never returned the motorcycle, it is precisely this consent by Perkins that negates any argument of the motorcycle being subject to a theft or larceny." *Id.* at 8.

In response to General's Motion for Summary Judgment, Perkins argues that while "the facts surrounding the stolen motorcycle do not satisfy the [common law] definition of larceny because Perkins voluntarily permitted Johnson to ride his motorcycle . . . . this is a classic case of breach of trust." (Pl. Response in Opp., p. 6). Perkins submits that "his motorcycle was the subject of a larceny as defined by the crime of breach of trust," as "South Carolina courts, and the South Carolina Legislature, have consistently held that a crime of breach of trust constitutes a larceny." *Id.*

In its Reply, General argues that South Carolina case law fails to "hold that a breach of trust and larceny are the same criminal offense containing the same criminal elements." (Def. Reply, p. 3). Specifically, General asserts that "[u]nlike breach of trust, . . . theft and larceny- both require the taking to be unlawful and without the consent of the owner." *Id.* at 4. Further, "[e]ven if the Court were persuaded by [Perkins'] argument, [General] has found no case whatsoever that holds these two criminal offenses are *as a matter of law* one and the same." *Id.* at 3.

It is true that South Carolina jurisprudence has consistently held that "larceny . . . is defined as the felonious taking and carrying away of the goods of another against the owner's will or without his consent." *See, e.g., State v. Mitchell,* 675 S.E.2d 435, 437 (S.C. 2009). However, the South Carolina breach of trust statute, which was originally passed as law in 1866 in language nearly identical to its

6

present form,[3] specifically provides that "A person committing a breach of trust with a fraudulent intention or a person who hires or counsels another person to commit a breach of trust with a fraudulent intention **is guilty of larceny**." S.C. Code Ann. § 16-13-230 (2006) (emphasis added). The South Carolina Supreme Court has explained that the "object of [passing the breach of trust statute] was simply to enlarge the field of larceny, removing what before might have been a defense for those who received property in trust and afterwards fraudulently appropriated it." *State v. McCann,* 166 S.E.2d 411, 412 (S.C. 1932) (quoting *State v. Shirer,* 20 S.C. 392 (1884)). As both parties seem to acknowledge,[4] under the common law,

> an essential element of the offense of larceny is an unlawful acquisition of possession or a "trespassory taking." Accordingly, when a person in lawful possession of property, such as a bailee, formulates an intent to convert property to his own use, and does so convert the property, he cannot be convicted of larceny.

*McPhatter v. Leeke,* 442 F. Supp. 1252, 1254 (D.S.C. 1978) (interpreting South Carolina law). However, "**[i]n order to cure this deficiency in the common law[,] the South Carolina legislature enacted a statute which expanded the crime of larceny to include breach of trust with fraudulent intent**." *Id.* (emphasis added); *see* S.C. Code Ann. § 16-13-230. As such, "breach of trust with

---

[3]South Carolina Code Section 1149 (1932) provided: "Any person committing a breach of trust with a fraudulent intention shall be held guilty of larceny; and so shall any person who shall hire or counsel any other person to commit a breach of trust with a fraudulent intention." *State v. McCann,* 166 S.E.2d 411, 412 (S.C. 1932) (quoting S.C. Code Ann. § 1149 (1932)).

[4]*See* Def. Motion for Summary Judgment, pp. 7-8; Def. Reply, p. 4 (stating "theft and larceny- both require the taking to be <u>unlawful</u> and <u>without the consent</u> of the owner."); *see also* Pl. Response in Opp., p. 6 (stating "the facts surrounding the stolen motorcycle do not satisfy the [common law] definition of larceny because Perkins voluntarily permitted Johnson to ride his motorcycle").

fraudulent intent, in this state, is nothing more or less than larceny. It might well be termed 'statutory larceny,' as distinguished from larceny at common law." *McCann,* 166 S.E.2d at 413.[5]

General correctly points out that there is a clear distinction between the crimes of larceny and breach of trust. The South Carolina Supreme Court explained this distinction as follows: "In common-law larceny, possession of the property stolen is obtained *unlawfully*, while in breach of trust, the possession is obtained *lawfully*." *McCann,* 166 S.E.2d at 413. When stated more precisely, "[b]reach of trust is larceny after trust, which includes all of the elements of larceny . . . except the unlawful taking in the beginning." *State v. Scott,* 497 S.E.2d 735, 737-38 (S.C. Ct. App. 1998) (quoting *State v. Owings,* 31 S.E.2d 906, 907 (S.C. 1944)). The fact that unlawful taking is not an element required to establish a breach of trust has no bearing on this matter. South Carolina jurisprudence, together with a careful reading of § 16-13-230

> reveals that [§ 16-13-230] did not establish a new offense with an essential element of lawful possession. **Section 16-13-230 merely expanded the definition of common law larceny by eliminating the element of trespassory taking or unlawful possession. Accordingly, after the enactment of the statute it became possible to convict a person of larceny without the necessity of proving unlawful possession.** The statute merely eliminated an element, unlawful possession[.]

*McPhatter,* 442 F. Supp. at 1254 (citing *State v. Owings,* 31 S.E.2d 906 (1944)).

In the case at bar, the evidence suggests that Perkins initially contacted law enforcement on May 18, 2008, about the potential loss of the motorcycle, but he did not want to report the motorcycle as

---

[5]As early as 1884, the South Carolina Supreme Court recognized that the crime of larceny includes the crime of breach of trust. *See State v. Shirer,* 20 S.C. 392 (1884). Since that time, South Carolina jurisprudence has not once held the crimes of larceny and breach of trust to be mutually exclusive. *McPhatter v. Leeke,* 442 F. Supp. 1252, 1255 (D.S.C. 1978). "In fact, both offenses merge and constitute the single crime of larceny." *Id.*

8

stolen because it had only been a few hours since he let Jenkins and Johnson ride the motorcycle, and he was friends with Jenkins. *See generally* (Def. Motion for Summary Judgment, Ex. "D," pp. 31-32). However, when the motorcycle was not returned on the morning of May 19, 2008, Perkins notified the Horry County Police Department to file a stolen vehicle police report. *See* (Pl. Response in Opp., Ex. "A"). After receiving a copy of the police report, Perkins notified General of the loss on May 21, 2008. The Insurance Agent Report from that date states "police advised this was a 'breach of trust.'" (Pl. Response in Opp., Ex. "B"). Moreover, General employee Rob Mezei ("Mezei") spoke with Duke of the Horry County Police Department, who stated that he noticed "this 'Breach of Trust' report come across his desk." (Pl. Response in Opp., Ex. "C") Duke also contacted a judge in Horry County, who refused to issue a warrant for theft but "agreed at most, this was a 'breach of trust.'" *Id.*

## **Conclusion**

The Policy at issue clearly provides Comprehensive coverage for any loss of the motorcycle due to "theft or larceny." Under South Carolina law, breach of trust is a larceny. In fact, Perkins' entrustment of the motorcycle to Johnson, who in turn allegedly formulated an intent to convert the property to his own and fraudulently appropriated it, is the exact scenario the prevention of which was the goal behind expanding the crime of larceny through passage of the breach of trust statute. *See McCann,* 166 S.E.2d at 412 (The "object of [passing the breach of trust statute] was simply to enlarge the field of larceny, removing what before might have been a defense for those who received property in trust and afterwards fraudulently appropriated it."(quoting *State v. Shirer,* 20 S.C. 392 (1884))). Viewing the evidence in the light most favorable to Perkins, there is at least a genuine issue of material

9

fact as to whether General has breached the insurance contract[6] and acted in bad faith in denying Perkins' claim for benefits as a result of the loss of the motorcycle due to larceny. For the foregoing reasons, this Court **DENIES** the Defendant's Motion for Summary Judgment [Docket 20].

**IT IS SO ORDERED.**

        s/ R. Bryan Harwell
        R. Bryan Harwell
        United States District Judge

October 6, 2010
Florence, South Carolina

---

[6]The alleged breach of trust by Johnson, if true, would qualify as "larceny," which is covered under the Policy. However, there remains a question of fact as to whether a breach of trust actually occurred because "the Plaintiff and General share a mutual understanding that an 'Horry County judge <u>refused</u> to issue a warrant [for] Johnson's arrest for breach of trust.'" (Def. Reply, p. 4) (citing Pl. Response in Opp., p. 6).